Our final case is 22-2000, Taizhou United v. United States. Please proceed, Mr. Horgan. Good morning, or perhaps afternoon, I'm not sure which it is at this point. May it please the Court. The first question to be addressed today, in this case, is whether the CIT properly allowed the Commerce Department to inject a post hoc rationalization to support a decision it had made eight years earlier. In this case, the remand determination proffered a new rationale to support the countervailing of glass subsidies, by suggesting that even though in its initial finding it found that glass was an input for the subject merchandise, on its remand it said, well, it's not an input. So it's really not an input, but it doesn't need to be. So this is the first time they made that determination. It's in the remand determination, eight or nine years after their original decision. The judge below affirmed that, saying it was okay because the Commerce Department offered this new rationale, instead of the Justice Department. We all know now, as a result of the Regents' decision, which is discussed in our briefs, that the Supreme Court has rejected the notion that you can approve a post hoc rationale based on the fact that an agency did it, rather than the Justice Department. But it doesn't matter which entity offered this post hoc rationale. It still has to be. There has to be a reason to allow it, and in this case there is none. Because there's no question that it was a post hoc rationale. The court below agreed with that. They just allowed the Commerce Department to do it. So just to level set, what is the specific rationale Commerce offered initially that was changed on remand? I just want to make sure I know when following and tracking. In the initial determination to countervail glass subsidies, they said glass was an input for aluminum extrusions. And in the court below, after eight years, the court decided that no, it's not an input. That the glass is not an input for aluminum extrusions. That aluminum extrusions are the subject merchandise. And therefore that determination violated the plain language of the order. On remand, Commerce said, well, never mind. It's not an input. But it doesn't have to be. Well, let me ask a question. One of the government's arguments on appeal is that you forfeited the entire post hoc rationalization argument under Regents because you didn't raise these legal arguments below. Did you have an opportunity to do that? We had an opportunity to raise the post hoc rationale argument, and we did. And the court addressed it in its decision. What the court surprised us with was it made, no, this is not something the government argued. The court on its own decided it would approve the post hoc rationale based on the fact that it was Commerce rather than Justice. So we never had an opportunity to address that issue because the judge offered that reasoning in his opinion after we had completed the briefing on that issue. There was a subsequent rehearing, but only on other issues that the court had failed to decide initially. So we never had an opportunity below to address the post hoc rationale argument being approved as a result of the Commerce Department issuing it rather than the Justice Department. But we did address the post hoc rationale argument. We raised it. That's why the court addressed it below. Okay, well, since we're on this forfeit topic, let me just jump you ahead because the government also argues that you forfeited the upstream subsidies argument. Where in the record before Commerce or the trial court did you make an argument that the analysis should have been performed under the upstream subsidies statute? We did not make an argument prior to the briefing in this court. That is true. But this is part of the same, it's support for the same argument that we have been making all along. That there has to be some sort of connection between the alleged glass subsidy, the alleged subsidy, and the subject merchandise. That there's got to be some tying. So the upstream subsidy provision that we cited in the briefs here are just additional support for that argument. And it does show when Congress enacted the law, it intended to limit the notion that you could take grants given to upstream producers and assess countervailing duties on the consumers of those items. And the statute makes it clear that it had to be an input in order to do that. And when Commerce made its original determination that it was an input, then of course it would have been okay. But now we know that it's not an input based on the decision of the court below. So that's why it's appropriate to discuss it here, even though it hadn't been discussed below. What about the UANDA decision? The UANDA decision, there were one and two, UANDA. And in that case, what the court held was that the aluminum extrusions embedded in curtain log units did not qualify for two exclusions. So in the first one, it was an exclusion for finished goods. Second one, it was an exclusion for kits. But in this case, the court never held that aluminum extrusions themselves were the subject merchandise, rather than the aluminum extrusions embedded. Didn't they conclude that the original order covered glass? No, the original order did not cover glass. No one ever determined that. In fact, the language of the scope explicitly excludes non-aluminum extrusions items like glass. So no court or even the Commerce Department has ever held that glass itself is the subject merchandise. So I think what we have to look at is when you look back at the Regents' decision, it says the basic rule is that an agency must defend the determination based on the reasons given when it acted. You can't countervail glass here because it's not an input. They've now determined that it's not an input. So if you can't countervail it as an input, then you can't countervail it at all. And that's the decision that this court should make. The second issue that we raise, if you get past this post hoc reasoning argument, you look at the merits of the decision. Again, the court should not affirm because all goods provided at Jang Ho are countervailable under a CBD order on aluminum extrusions. In support of the notion that DOC could countervail all goods, the government in its remand determinations post hoc rationale said anything that they get is countervailable. And what we've suggested is that if you look at the preamble to the regs that is cited by both the defendant and the interveners, that it says that CBD regulations indicate that countervailable subsidies should include any goods that are provided at less than adequate remuneration to the producer of subject merchandise. And in our case, Jang Ho is not a producer of glass and it's not a producer of aluminum extrusions. It buys both items and assembles them to form a curtain wall. So that being the case, I mean, there's no real reason. It's outside the scope. The glass is outside the scope, as I just discussed. There's no basis for treating Jang Ho as a producer of subject merchandise. So you can't countervail any subsidy received because it's not a producer of aluminum extrusions. And you only get to that if you first agree that they can offer this post hoc rationalization at all. I think the Supreme Court has made it clear that that's not allowable under these circumstances where they're substituting a new rate rationale eight years after they made their original determination. Unless you have any questions, I'll keep the rest of you. We have time for a bottle at this time. Mr. Adelschick, am I saying that right? How do I say it? Adelschick, Your Honor. Okay, Adelschick. Please proceed. I have to step out for a sec, but I'm going to be right back. But you can proceed. I can actually hear that argument is piped in. So please proceed. You're sure, Your Honor? Yep. We can wait? No? Okay. Good afternoon, and may it please the Court. Jang Ho argues that Commerce violated the law by countervailing upstream subsidies, but Commerce did no such thing. Commerce stated there were no upstream subsidies at issue in this case. There was no allegation of an upstream subsidy, and upstream subsidies were not part of Commerce's analysis in this case. How did this come up? The trial court expressed a hypothetical concern about possible double counting. This was not an issue that was raised by Jang Ho at any point during the proceeding. And I think opposing counsel even admitted in his earlier argument that he thought it was forfeited. He might not have used those words, but I think he agreed with me. And there are waiver issues all over the place. I won't belabor them. This is twice waived by the failure to exhaust before Commerce and the failure to develop this issue before the trial court. Do you agree that Commerce offered a different rationale on remand? No, Your Honor. So if I could just unpack the post-rationalization issue. The argument is that in Commerce's tying analysis, there was a post hoc rationalization. But Commerce simply complied with the trial court's remand order. The agency conducted a new administrative proceeding on remand with a notice and comment process as part of that. And then the agency issued a new and final redetermination of the matter. And throughout that whole process, the rationale for Commerce's tying analysis never changed. Under that analysis for tying, the agency does not countervail a benefit if the evidence shows that the subsidy was tied to non-subject merchandise, evidence of tying to non-subject merchandise at the time of bestowal. And in the original determination and in the redetermination, Commerce found that Jang Ho's glass subsidies were not tied to non-subject merchandise. Not tied to non-subject merchandise. And the agency found no evidence to the contrary. It was Jang Ho's burden to make whatever record of tying that it wished to do so. It put no evidence on the record in the proceeding, either originally before Commerce or during the remand. There's no evidence of tying. And it's unremarkable that Commerce conducted a new administrative proceeding on remand and then issued a final redetermination of the tying issue. Following up on Judge Lurie's prior question to opposing counsel, can you address the Uanda case? Absolutely, Your Honor. That goes to the scope argument that has been made. And Jang Ho's arguing essentially that aluminum extrusions are the subject merchandise. That's all there is. The scope of this order, this order in the record, it fills an entire page of the Federal Register. And it has formed an extensive amount of litigation, including Uanda 1 and 2. And there in Uanda 1, there's an entire section of that opinion. I believe the heading is something like, the scope includes curtain wall units. Those curtain wall units contain both glass and aluminum extrusions and are subject merchandise. This Court has twice held that. So what does that do for our case here? Well, Jang Ho produces the same curtain wall units and was the same appellant in Uanda 2. And consistent with those decisions, Commerce properly countervailed the subsidized glass that went into Jang Ho's curtain wall units, which are, as this Court has held twice, subject merchandise. Does that decide the case in conjunction with the waiver? Yes, Your Honor. If there's anything that was properly preserved and presented in this case, it's that narrow scope issue, which is squarely resolved by the Court's prior Uanda decisions. But if I could just expound on the allegation of the post hoc rationalization, which, as I mentioned, is a bit of a red herring because the rationale didn't change. But it's important to recognize that Commerce can always take the second of the two regents' options. And there's two options. On a remand, an agency can always either choose to expound on the reasons for its original decision, or it can take the second option of issuing a new decision. And that's what Commerce always does in these countervailing duty and anti-dumping duty cases. They're always taking that second door. They are issuing a new decision. After notice and comment, they issue a draft redetermination to the parties. And then they receive comments upon it and address those comments. And if, at the end of that process, Commerce's decision changes what was in the final determination that was published in the Federal Register, they will publish an amended final if there's a change. There was no change here, and so there was nothing else to publish in that regard. But there was no change in Commerce's rationale, and the regent's doctrine does not support Jang Ho's argument at all. Because the trial court properly sustained Commerce's determinations in this case, the court should affirm. Thank you. Mr. Holt? No, he gets to go next. Oh, excuse me. That's okay. May it please the court. Derek Holt on behalf of the Defendant Appellee Aluminum Extrusion Spare Trade Committee. I wanted to address one issue in my two minutes that I have, but opposing counsel waived the issue and they just admitted it. So I'll just go ahead and quickly go through it and just say that Commerce properly countervailed the glass subsidy as an LTAR subsidy. There's no dispute that Jang Ho purchased the glass from a government authority. The glass goes directly from a government authority to Jang Ho, and the petitioners did not allege the subsidy as a upstream subsidy. We did not allege sand for LTAR. It was glass for LTAR, which is directly provided to Jang Ho from a government entity. Then the second thing is that this whole argument about this upstream subsidy comes from Jang Ho's essentially cherry-picking information. If you go to Appendix 90 of the Joint Appendix, you clearly see that the first sentence before Jang Ho looks at the selected quotes says, Glass for use in certain groups of subject merchandise, including curtain wall units produced by entities like Jang Ho, is produced and sold by state-owned enterprises and state-controlled entities in China at subsidized rates. That is exactly the argument that we made that the government is providing Jang Ho a glass for less than adequate remuneration. And with that, we respectfully request that the court affirm Congress' determination in the CLT's opinion upholding it. Thank you. Thank you, Mr. Holt. Now you get to go, Mr. Horgan. Thank you. Just to be precise, I think counsel for the government said, well, if you look at the scope, it kind of covers this stuff. But you have to actually read the scope. You have to look at the language. And remember, the court below found that aluminum extrusions were within the scope and that curtain walls were not. So that's the law of the case. When you see the law of the case argument, they didn't appeal that decision. The law of the case is that the scope includes aluminum extrusions and not curtain walls, not per se. And if you read the language, it supports that. Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including but not limited to curtain walls. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. Are curtain walls distinct from curtain wall units? No, I'm using them interchangeably. A curtain wall is the entire structure that's in wraps of building. So that's a curtain wall. A curtain wall unit is one of the panels that's used to do that. But it said the scope includes aluminum extrusion components that are attached to form subassemblies, which is what you wanted to help what the curtain walls were. They were subassemblies. But the scope does not include the non-aluminum extrusion components of subassemblies. And that's what the court below held. The plain language says it's these aluminum extrusions in the curtain walls. That's what's in the scope. It's not the curtain walls themselves, because there are lots of other little parts that are in curtain walls or curtain wall units. And finally, I think the government, when it says, well, we can just make a new determination any time, that's not what the Supreme Court said. The Supreme Court said the basic rule is that the court, excuse me, the basic rule here is clear. An agency must defend its actions based on the reasons it gave when it acted. So when it acted the first time, not when it acted the second or third time. And the court also said we can't be forced to fight a moving target, so they can't change the rationale with every new remand determination. That's what the Supreme Court held, and I think that's what binds this court, to make a decision that this post hoc rationale is not to be approved. Thank you, Your Honor. Thank you, both counsel. The case is taken under submission.